**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-30106

_____


HARVEY GOLEMAN, WANDA GOLEMAN,

Plaintiffs-Appellees,

VERSUS

WAL-MART STORES, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-530)

_____

January 18, 1999

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


This deceptively simple "slip and fall" incident has mushroomed into a four-year litigation involving two trials, several district court orders, and this appeal. Wal-Mart Stores, Inc. ("Wal-Mart"), challenges both the decisions of the magistrate judge and the second jury's verdict. It asserts that (1) the magistrate judge erred in reducing the jury's allocation of fault to the plaintiff from 40% to 0%; (2) the magistrate judge

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

improperly granted a new trial; (3) the magistrate judge incorrectly limited the new trial to the issue of lost wages and lost earning capacity; and (4) the second jury awarded damages that are excessively high. We affirm the magistrate judge's decision to reduce the plaintiff's fault but reverse the decision to grant a new trial. Because we reinstate the damages awarded by the first jury, we do not consider Wal-Mart's third and fourth challenges.

## I.

Harvey Goleman slipped and fell in the restroom of a Wal-Mart store. A Wal-Mart employee had recently mopped the floor to remove overflow from a toilet but had failed to leave any signs or cones to indicate that the floor was wet. Goleman injured his left knee and lower back and was forced to have his kneecap removed.

In this action removed from state court, Goleman asserted that Wal-Mart was solely at fault. He claimed damages for pain and suffering, permanent disability, loss of enjoyment of life, lost economic opportunity, and medical expenses. Mrs. Goleman claimed damages for loss of consortium. Wal-Mart denied the allegations, asserted that Goleman was at fault, and claimed that because Goleman had undergone knee surgery approximately six months before the incident, his damages were caused by a pre-existing injury.

The parties agreed to trial by a magistrate judge. The jury returned a verdict finding that Wal-Mart was 60% at fault and that Goleman was 40% at fault. After the verdict, the Golemans filed a motion under FED. R. CIV. P. 50(b) for judgment as a matter of law

2

("j.m.l.") on the issue of liability, requesting that Goleman's comparative fault be reduced to 0%. The magistrate judge granted the motion.

Goleman filed a motion for new trial on the issue of all damages awarded by the jury. The magistrate judge granted the motion, in part, concluding that the award of $8,816.66 for lost wages "and/or" lost earning capacity was contrary to the great weight of the evidence. The court reasoned that, in light of Goleman's employment and educational history,[2] the $8,816.66 award was too low to encompass both lost wages and lost earning capacity.

The magistrate judge determined that Goleman had established by uncontroverted evidence that he had suffered a loss of earning capacity, because it was undisputed that he had suffered permanent restrictions on his physical activity that he did not have before the accident.[3] The magistrate judge thus granted a new trial limited to Goleman's lost wages and lost earning capacity.

The second jury awarded Goleman $14,400 for lost wages, $205,000 for future wages, and $75,000 for lost earning capacity. Wal-Mart filed a motion for remittur and an alternative motion for new trial. The magistrate judge conditionally denied the new

_____

[2] Beginning in 1991, Goleman attended Northeastern Louisiana University part-time. After he began to have problems with his knees in the fall of 1992, his grades dropped, and he was unable to complete several semesters.

[3] In support of its conclusion that Goleman had suffered a loss of earning capacity, the court also pointed to (1) the testimony of Goleman's rehabilitation expert that after the injury, Goleman was physically able to perform only 11% of the jobs defined by the *Dictionary of Occupational Titles* and possessed the skills to perform only 4% of those jobs and (2) the testimony of a supervisor of a local employment agency who stated that over a five-month period she had been unable to find Goleman a job that he could perform.

3

trial, subject to Goleman's acceptance of a remittur of $75,000; Goleman accepted the remittur.  Wal-Mart filed a renewed motion for new trial, which was denied.

## II.

A j.m.l. can be sustained only if, considering the evidence in the light most favorable to the party opposed to the verdict, the "evidence points 'so strongly and overwhelmingly in favor of one party' that a reasonable trier of fact could not arrive at a contrary verdict."  *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1421 (5th Cir. 1993) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).  The standard is the same on appeal as in the district court.  *Resolution Trust Corp. v. Cramer*, 6 F.3d 1102, 1109 (5th Cir. 1993).

In this diversity case, we apply the substantive law of Louisiana, under which, to prove a plaintiff's comparative fault, the defendant bears the burden of establishing by a preponderance of the evidence that the plaintiff failed to act as a reasonable person and that his negligence was a legal cause of the accident. *United States Fidelity & Guar. Co. v. Hi-Tower Concrete Pumping Serv., Inc.*, 574 So. 2d 424, 434 (La. App. 2d Cir.), *writ denied*, 578 So. 2d 136 (La.), *and writ denied*, 578 So. 2d 137 (La. 1991). In viewing comparative fault, a court should consider (1) whether the conduct resulted in inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities

4

of the actor; and (5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So. 2d 967, 974 (La. 1985). Additionally, "[a]llocation of comparative fault is a factual matter lying within the discretion of the fact finder and will not be disturbed unless manifestly erroneous." *Simeoneaux v. Humedicenters, Inc.*, 642 So. 2d 318, 321 (La. App. 4th Cir. 1994) (quoting *Scamardo v. New Orleans Stevedoring Co.*, 595 So. 2d 1242 (La. App. 4th Cir. 1992)).

Wal-Mart relies heavily on this sort of language to attack the j.m.l. A review of the way Louisiana courts have applied this language, however, reveals a willingness to modify jury findings of comparative fault in factual situations very similar to those in the case at hand.

In *Breaux v. Wal-Mart Stores, Inc.*, 635 So. 2d 667 (La. App. 3d Cir.), *writ denied*, 640 So. 2d 1347 (La. 1994), the court reduced the jury's allocation of comparative fault to a plaintiff from 30% to 10%. The facts of that case also involve a customer who slipped and fell on a wet floor in a Wal-Mart store bathroom. The plaintiff had slipped while carrying her fifteen-month-old daughter through a puddle located on the bathroom floor. The jury apparently had decided that though Wal-Mart was principally at fault, the plaintiff should have been more careful in walking, because she had already noticed that water was leaking onto the floor.

On appeal, however, the court held that even accepting Wal-

Mart's view of the evidence, almost none of plaintiff's conduct could have contributed to her fall.  Though she knew the floor was wet, she did not know the water had leaked outside the stall she had entered.  Moreover, she had been distracted by a reasonable concern for her daughter's safety.

In light of this and of Wal-Mart's unreasonable failure to warn customers of the leaking water, the court did not hesitate to find the jury in clear error.  The only fault the jurors reasonably could have assigned to plaintiff's conduct stemmed from her failure to brace herself more firmly when walking on a potentially wet surface, so the court allocated 10% fault to her.

Thus, a Louisiana appellate court was willing to intervene in a jury's allocation of comparative fault, even when there was an arguable theory under which the plaintiff could have been at greater fault.  The court rejected the jury's allocation of 30% fault to a plaintiff who knew the bathroom floor was wet.

In comparison, even under the version of the facts most favorable to Wal-Mart, Goleman had no notice that the bathroom floor was wet when he entered.  Additionally, he has alleged there was a partition facing the entrance to the door that blocked his view of the floor and that the wetness of a white tile floor is difficult to notice.  Wal-Mart does not dispute the color of the floor or that the partition existed.  Thus, it appears that there is even less evidence in this case supporting allocating fault to the plaintiff than there was in *Breaux*.

Wal-Mart argues that given Goleman's recent knee surgery, he

should have been particularly careful in walking, to avoid slipping. Additionally, unlike the circumstances in many slip and fall situations, there was no merchandise to distract Goleman on his way into the bathroom. Considering this in conjunction with the deference that should be afforded jury determinations, Wal-Mart argues that a reasonable jury could have found Goleman liable for 40% of the fault.

Unfortunately for Wal-Mart, there is no basis under Louisiana law for placing a higher duty of care on a plaintiff simply because he is already injured. Wal-Mart does not point to any part of the Louisiana code or caselaw that supports its argument. Additionally, Louisiana courts have found that customers using bathrooms located in stores do not lose protection of that store's duty of care simply because there is no merchandise to distract them. "We do not find that factor dispositive, for a store patron might be as distracted by a store's backrooms as might be a theatre patron who is offered the opportunity to go backstage." *Sims v. Winn Dixie La., Inc.*, 638 So. 2d 716, 719 (La. App. 3d Cir.), *writ denied*, 644 So. 2d 1062 (La. 1994). Thus, Wal-Mart cannot claim a lower duty of care simply because the accident occurred in the bathroom and not in the main store.

A reasonable jury could assign fault to Goleman only under a general obligation of customers entering bathrooms to watch for slippery floors. On this theory, every customer who enters a bathroom should expect to encounter water on floors and the danger of falling. As Wal-Mart puts it, "the jury concluded that

7

Mr. Goleman bore 40 percent of the fault in not watching where he was going and in not being careful." This approach, however, also has been rejected by Louisiana courts:

> Neither the jurisprudence nor legislative adoption of comparative fault in assessing liability in such cases automatically require [*sic*] fact finders to assign fault whenever a version of the facts might suggest a plaintiff failed to take "every possible step" to guard against the risk of falling after noticing a wet floor surface.

*Breaux*, 635 So. 2d at 670. Because Wal-Mart has failed to raise a reasonable theory that allocates fault to Goleman, and because the discretion afforded Louisiana juries is highly deferential but not absolute, we affirm the j.m.l. reducing Goleman's fault from 40% to 0%.


III.

A.

Wal-Mart attacks the grant of a new trial on the issue of lost earning capacity and lost wages. It questions both the decision to grant a new trial and the limitation of that trial to these two damages issues. We review the grant of a new trial for abuse of discretion. *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998).

A court should not grant a new trial on evidentiary grounds unless the verdict is against the great, and not merely the greater, weight of the evidence. *Conway v. Chemical Leaman Tanklines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). A verdict, however, can be against the great weight of the evidence "even if there is substantial evidence to support it." *Rousseau v. Teledyne Movable Offshore, Inc.*, 812 F.2d 971, 972 (5th Cir. 1987).

This court has identified three factors that, if present, should reinforce a district court's deference to the jury: (1) simplicity of the issues; (2) extent to which the evidence is in dispute; and (3) absence of any pernicious or undesirable occurrence at trial. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). These three factors are present in this case.

First, juries often are entrusted with resolving the straightforward question of lost earning capacity in a slip-and-fall lawsuit. Second, the parties no longer dispute the evidence. Third, there is nothing in the record suggesting any improper conduct at trial.

The presence of these factors counsels us to conduct a more rigorous review of the magistrate judge's actions than the abuse of discretion standard normally would require. "In this situation there is little, if any, need to defer to the judge as against the jury, and we will not affirm an order granting a new trial unless on review we are satisfied, independently, that the jury verdict was against the great weight of the evidence." *Id.* at 931.

B.

The part of the jury damages award in question stems from the curious instruction on damages in the first trial. The verdict form provided only one line for "lost wages and/or lost earning capacity." The combination of the conjunctive "and" and the disjunctive "or" suggested that the jury could award damages for

9

*either* (1) lost past wages *and* lost earning capacity or (2) lost past wages *or* lost earning capacity.  There is nothing in the jury instruction or verdict form that requires the jury, on finding Wal-Mart liable, to assess damages for both elements.  Neither party objected to this part of the verdict form.

The magistrate judge found that the jury award on this line of the verdict form, $8,816.66, could constitute a low award for Goleman's lost past wages.  Because, however, as the court stated, "that award was rendered as to *both* the claim for lost wages and the claim for loss of earning capacity, it is against the great weight of evidence."  Because the court found that Goleman had suffered a loss of earning capacity, it assumed that the $8,816.66 must represent awards for *both* lost past wages and lost earning capacity rather than for *either* lost past wages *or* lost earning capacity (as implied by the "and/or").  We disagree.

In support of its decision to set aside the verdict, the court cited to three items of evidence.  First, it concluded that it is "undisputed that as a result of the injury sustained in the Wal-Mart fall, plaintiff now has permanent restrictions on his physical activities . . . that he did not have before."  Second, it pointed to testimony by Goleman's vocational rehabilitation expert discussing the limited number of jobs Goleman could perform with his physical restrictions.  Finally, it noted that an employment-placement expert could not find any job for Goleman over a five-month period.

These facts do not show that the verdict was against the great

10

weight of the evidence. Under the theory advanced by Wal-Mart, the jury could have accepted all of these facts as true and still have refused to award damages for lost earning capacity. Wal-Mart does not deny that Goleman suffered permanent physical restrictions as a result of the fall. Rather, it argues that Goleman's physical restrictions before his accident *already* had limited him to a "sitting type job." Thus, his earning capacity "didn't change from before the fall [to] after the fall."

During cross-examination, Goleman's orthopedic surgeon, Dr. McClelland, agreed that immediately before the accident, Goleman could do only a "sitting type job," and Goleman would be able to do only a "sitting type job" in the future, as well. Additionally, Wal-Mart's counsel established during cross-examination that Goleman's vocational rehabilitation expert calculated his 11% figure based on the assumption Goleman could work only in a "sitting-type job." Thus, this testimony also supports Wal-Mart's theory that Goleman's pre-existing injuries already had restricted him to sedentary jobs. Finally, the inability of the temporary-employment placement specialist to find Goleman a job for three months is not conclusive, given that Goleman admitted that he had not been able to find a job for the year before the accident, in part because of his increasingly serious pre-accident knee problems.

Under a normal abuse-of-discretion standard of review, we likely would defer to the magistrate judge's experience. In this situation, though, we must also guard against "the trial judge []

11

simply substituting his judgment for that of the jury . . . ." *Shows*, 671 F.2d at 930.  The verdict on lost earning capacity is not against the great weight of the evidence, because Wal-Mart's theory can survive the undisputed evidence relied on by the magistrate judge.

Even accepting that Goleman suffers from greater physical restrictions as a result of the accident, Wal-Mart showed that these restrictions do not affect his already limited earning capacity.  Because the "great weight of the evidence" standard is not easy for a court to overcome, we defer to the jury when the adverse party has raised a persuasive theory not directly contradicted by the evidence presented by the other party.

The jury reasonably could have believed that Goleman's economic loss from the accident consisted only of lost wages from the type of jobs he had held in the past.  As the magistrate judge noted, "[g]iven plaintiff's employment and educational history prior to the incident, an award of $8,816.66 for past and future lost wages, although on the low side, would not have been against the great weight of the evidence."  Because we conclude that the jury could have refused to award Goleman anything for loss of earning capacity under the "and/or" instructions and under the theory advanced by Wal-Mart, the $8,816.66 award was not against the great weight of the evidence.

IV.

Because we reverse the grant of a new trial, we do not

12

consider Wal-Mart's appeal of the limitation of that trial to economic damages or its appeal of the second jury verdict.  The j.m.l. reducing the allocation of fault to Goleman from 40% to 0% is AFFIRMED, but the grant of a new trial is REVERSED, and judgment is RENDERED in accordance with the first verdict.